UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **Rich Robins,** § § § § § § § § § § § § § § § | | **CIVIL ACTION:** |
| Plaintiff | | |
| vs. | | |
| | | Expedited Hearing Requested |
| **State Bar of Texas aka the "Texas Bar" (and officials within it),** | | |
| **Commission for Lawyer Discipline** | | |
| **John Brannon & Raquel West** | | |
| Defendants | | |

## COMPLAINT

TO THE HONORABLE U.S. DISTRICT JUDGE:

**COMES NOW**, Plaintiff Rich Robins, who expeditiously submits this time-sensitive action on behalf of himself and states as follows…

## Introduction

1. The Plaintiff brings this legal action against the State Bar of Texas (*hereinafter* the "Texas Bar"), its Commission for Lawyer Discipline (*hereinafter* the "CFLD"), the CFLD's assistant disciplinary counsel here in Houston, Texas (John Brannon) & also an assigned visiting judge (Raquel West of Beaumont, Texas) (*hereinafter* the "Defendants"). Plaintiff Robins hereby alleges, on information and belief, as follows.

1

2. On July 2nd, 2021 the Fifth Circuit Court of Appeals in New Orleans, Louisiana decisively ruled that the Defendants Texas Bar (& thereby its CFLD) impermissibly, unlawfully and enduringly spent attorney members' coercively extracted annual dues on ideological and political endeavors that are *not* germane to regulating or improving the practice of law here in Texas. *See McDonald v. Longley*, 4 F.4th 229 (5th Cir. 2021). The Court also found that the Defendants had similarly unlawfully not given dues-paying members constitutionally adequate and meaningful notice of how their coercively extracted dues money would be spent or where their fees would go. *Id*. Additionally, the Court found that the Defendants have not given members adequate veto authority over such expenditures. *Id*.

3. Subsequently the Fifth Circuit issued its relevant mandate on July 26, 2021 (ECF No. 103). It thereby sided with the amicus brief-submitting Texas Attorney General Ken Paxton. Perhaps not altogether coincidentally, the Texas Bar has since prosecuted Attorney General Paxton. That bar continues trying to disbar Attorney Paxton in Collin County District Court's case # 471-02574-2022, which is available online at:

https://apps2.collincountytx.gov/judicialrecords/case .

4. For decades, the Texas Bar has *already* had ample notice from the U.S. Supreme Court and the Texas Government Code that members are not to be coerced into funding expenditures that are not germane to the permissible purposes of a mandatory bar. *See Keller v. State Bar of California*, 496 U.S. 1 (1990). See also TEX. GOV'T CODE §81.034. The Texas Bar continues to operate an attorney disciplinary system that is not in compliance with federal constitutional law.

## Nature of the Action

5. The Texas Bar defendants are well aware of the abovementioned. Nevertheless, they continue proceeding callously by using their attorney disciplinary system to try to further their political agenda and stifle dissent against that bar's otherwise more self-enriching, fee-intensive ways. That bar insists upon applying merely a "**preponderance of the evidence**" standard to its ethics enforcement actions, instead of the U.S. Supreme Court's and federal constitutionally required "**clear & convincing**"

2

one. Yesterday (February 2nd, 2023) Plaintiff Robins was notified by the bar that his case will be no different and that the "preponderance" standard is what will apply to it.

### Clear & Convincing vs. Preponderance of the Evidence Standards

6. **Apparently over 80% of U.S. states & Washington D.C. already have their respective attorney discipline authorities use the "clear & convincing" burden of proof**. The exceptions apparently consist of merely 9 U.S. states: Arkansas, Kentucky, Minnesota, Michigan, Missouri, New Mexico, Tennessee, Utah, and Texas. In contrast, apparently 42 U.S. states and Washington D.C. nevertheless use the "clear & convincing" standard, or its virtual equivalent. This includes Florida, New York, California, Washington D.C., Oklahoma, Illinois and *many* others. In the pursuit of enabling Texas to become constitutionally compliant where its attorney population is concerned, Plaintiff Robins hereby seeks declaratory and injunctive relief prohibiting the Defendants' continuation of its enforcement action against him in the absence of updating its burden of proof standard to the "clear & convincing" one.

### Jurisdiction & Venue

7. This Court has jurisdiction over this case pursuant to, for example, 42 U.S.C. §1983 as the Plaintiff's claim involves encroachments upon his civil rights in violation of federal statutory authority. Meanwhile the Court has supplemental jurisdiction over the Plaintiffs' potential state law claims pursuant to 28 U.S.C. §1367(a).

8. Venue is proper in this Southern District pursuant to 28 U.S.C. §1391(b), because a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred and continue to occur in this District. Venue is also proper in this District pursuant to 28 US Code § 1391(b), as the Plaintiff lives in it.

9. Houston also happens to be where the Texas Bar's very substantial facility at 4801 Woodway Dr #315w, Houston, TX 77056 remains located. It is particularly relevant because that facility contains an attorney discipline department which Plaintiff Robins suspects predatorily pursues inadequately substantiated claims against scrutinizing attorney members based on vague interpretations of ethics rules which are applied in flagrant violation of U.S. Supreme Court caselaw that is otherwise meant to

3

protect and fortify attorney free speech, due process and other Constitutional rights: *Gentile v. State Bar of Nevada*, 501 U.S. 1030 (1991).   The apparent goals of such still unpunished Bar prosecutorial misconduct in Houston is seemingly to achieve some impermissible goals.   There appears to be a desire to maintain a culture of intimidation that distracts (still compulsory) bar member attorneys from thinking too much about the lavish salaries and taxpayer-financed benefits nevertheless paid for Texas Bar workers. Such employees include specialists in videography and communications strategy for a supposedly purportedly transparent organization.   *See* 2016 Texas Bar salary data at http://www.TexasBarSunset.com/salaries .   Another goal is seemingly to "make work" for otherwise idle Bar employees.

   10. Remarkably, the quantity of 6 figure salary recipients at the Texas Bar jumped by a third between 2016 and 2021, from 29 to 39 barely five years later. Plaintiff Robins does not have more recent data but litigation seems necessary here in Houston to further analyze the substantial improprieties plaguing the Texas Bar here, still with impunity.

## Parties

   11.   Plaintiff Rich Robins resides in Harris County, Texas, where he practices law and annually pays (still compulsory) membership dues as an active member of the Texas Bar.

   12.   The Defendant State Bar of Texas aka the "Texas Bar" (and its "CFLD") amounts to a *labor union* containing well over 105,000 actively licensed attorneys who are given no choice but to either keep individually paying the Defendants hundreds of dollars of compulsory dues each year *or* forfeit their rights to practice law here in Texas (or even regarding Texas, albeit from elsewhere).   The Texas Bar thereby appears to violate the somewhat new U.S. Supreme Court jurisprudence of *Janus v. AFSCME*. *Janus v. Am. Fed. of State, Cty., & Mun. Employees, Council 31*, 138 S. Ct. 2448, 2463-64 (2018).

   13. Anyhow, that bar sometimes poses as a Texas state agency, but with*out* the accompanying public scrutiny and budgetary constraints.   It is *not* registered in the

corporate information division of the Texas Secretary of State but its state headquarters are in Austin, Texas apparently at:

Texas Law Center
1414 Colorado Street
Austin, Texas 78701

As no registered agent is publicly listed (to the best of Plaintiff Robins' knowledge) the following seems like a worthy recipient of this lawsuit:

Executive Director Ervin A. "Trey" Apffel

Executive Director Apffel is a former longstanding resident of the Southern District, in fact, from just outside of Houston (League City, Texas).

14. The State Bar Act of Texas' Government Code at §81.014 mentions that "[t]he state bar may sue and be sued in its own name."   TEX. GOV'T CODE  §81.014.  Meanwhile the Texas Bar is a public corporation and an admin. agency of the judicial department of government.  TEX. GOV'T CODE  §81.011

15. Texas' Supreme Court admirably respects the "self-rule" nature of the Texas Bar, so there does not appear to be particularly aggressive scrutiny of the Bar emerging from the highest state court of Texas.   Plaintiff Robins sincerely submits that this situation does *not* appear to him to be due to laziness or corruption on Texas' Supreme Court's part, though.  To the contrary, the relative lack of scrutiny compared to what state agencies seem to endure here in Texas appears to be due to that court's admirable respect for attorneys' right to self-rule and also to its members' dedication to focusing on the legal disputes that already keep them very (if not excruciatingly) busy.   In no way is this lawsuit meant to be insulting of the Supreme Court of Texas.   Plaintiff Robins' respect for that Court does not emanate from fear or even mere blind deference, but instead from sincere appreciation and admiration of their work ethic, dedication, intelligence and congeniality.  Because of the Supreme Court of Texas' documented and demonstrated "hands-off" approach to our self-rule-oriented Texas Bar, though, the *federal* court system is the preferred destination for this lawsuit, please.

5

16. By the way, it is Plaintiff Robins' understanding that most attorneys here in the USA do *not* have to be members of mandatory membership trade association-type state bar associations like Texas still has.  On that note, attorney self-rule could continue here in Texas to Plaintiff Robins' satisfaction.  The Virginia bar model appears to be worth replicating here, whereby the focus would be on the bar's providing merely attorney discipline, while a voluntary state bar exists separately for any trade association functions.  Virginia's state bar barely even offers continuing legal education (CLE), inspirationally enough.  Plaintiff Robins further explains why this arrangement would be preferable for Texas at his website **TexasBarSunset.com**'s proposed reforms section.

17.  One can see for one's self at the following official Texas Bar page on Youtube how attorney self-rule is thwarted, not promoted, through the Texas Bar status quo here in Texas.  In the following video clip, the Texas Bar's elected board is prodded by the executive director on April 29th, 2022 to let the attorney grievance reform endeavor conclude without even so much as a board vote, much less a membership referendum one:

http://www.shorturl.at/tvGMO

It is alternatively available in paragraph #1 at:
http://www.TexasBarSunset.com/reforms

One of the tenets of that reform endeavor was to get a vote on the "clear & convincing" standard.  The board has apparently not taken it up since Larry McDougal's presidency concluded soon thereafter and there have been no announcements that it will be taken up again in the foreseeable future, either.

## Factual Background

### Sunset Review

18.  Anyhow, Plaintiff Robins was arguably the most actively participating attorney member of the Texas Bar during the Texas state legislature's most recent Sunset Review of that bar during 2016 & 2017.  He was the *only* attorney to testify critically of the Texas Bar at all three relevant Sunset Review-related public hearings, for example.

He also submitted studiously prepared written materials which remain available at his website http://www.TexasBarSunset.com .   Joe Longley eventually joined the crusade and subsequently impressively made bar history as a petition candidate for the presidency who collected over 5,000 bar member signatures and then won the presidential election on the issue of opposing a dues increase in the wake of a major embezzlement at the Texas Bar, as detailed here:  http://www.TexasBarSunset.com/embezzling .

19. Despite Plaintiff Robins' well-meaning criticism meant to bring the Texas Bar more in compliance with longstanding legal precedent and other laws, he nevertheless testified in *support* of the Sunset bill which kept the Texas Bar in existence despite its (corrupting) trade association functions still peculiarly merged with attorney discipline ones.   One can view an official example of Plaintiff Robins testimony (primarily opposing a sneakily pursued dues increase attempt by the Texas Bar) by viewing the video of the Senate State Affairs Committee Sunset hearing that took place on March 23rd, 2017.   Plaintiff Rich Robins' few minutes of testimony begin during the third hour at approximately minute **3:37:30**

http://tlcsenate.granicus.com/MediaPlayer.php?view_id=42&clip_id=11969

20. Plaintiff Robins is not seeking to abolish self-rule here in Texas, but rather to help fix it by reducing Texas' present day legal licensing authority's demonstrated ability to harshly impose its political views and legally noncompliant practices on dissenting (still compulsory) members.

21. The Texas Bar defendants responded to Plaintiff Robins' Sunset activism approximately a year after the most recent Sunset Review concluded.   They did so by inflicting the *only* bar-initiated grievance enforcement action against Plaintiff Robins that he has *ever* endured, anywhere, during his nearly 30 years of actively practicing law.   Plaintiff Robins has also never been criminally prosecuted for anything, even a traffic ticket, during that entire time.   Meanwhile he has never been sued during his entire legal career, either, except by a reportedly deceased client's pair of sons whom the Texas Bar chose to pit *against* Plaintiff Robins rather than grant *both* sides' request for mediation in order to avoid escalating a surprising fee dispute.   The abovementioned lone grievance and lone lawsuit against Plaintiff Robins are based on the same fact scenario involving a

7

reportedly deceased, nearly mute client whose $7,000 (seven thousand dollar) claims against an unreliable estate liquidator in Tyler, Texas survived her and wound up in Plaintiff Robins' possession.

22. Legislation resulting from the most recent Sunset Review of the Texas Bar, which emerged during the 85th Texas state legislative session, requires that that bar increasingly pursue the comparatively peaceful resolution of client disputes through mediation.   This option exists as an apparently required alternative to that bar's otherwise fomenting further fee dispute conflict and thereby profiting from its own contentious advocacy infrastructure amidst the predictably growing disagreement.  The abovementioned legislative mandate is available as SB302, at:
https://capitol.texas.gov/BillLookup/History.aspx?LegSess=85R&Bill=SB302

### The Texas Bar's Subsequent Enforcement Action

23. Nevertheless, the Texas Bar has opted to prosecute Plaintiff Robins for a supposed lack of candor for not rushing to report a supposed death of his disabled female client to the court, even as various exculpatory facts are nevertheless undisputed.   For example, no obituary has ever existed for the client (whose name is Cindy Crisp, of Gun Barrel City, Texas).  Additionally, Plaintiff Robins could not successfully obtain a death certificate for her despite repeated tries with the relevant state authorities.   While juggling various other tasks (including the pending, abovementioned legislative session) Plaintiff Robins eventually asked the relevant county court in Smith County, Texas (which contains Tyler) for help, while reluctantly reporting that she is "probably dead" based upon claims of her two sons (whom Plaintiff Robins had also never met).  Furthermore, Plaintiff Robins could no longer successfully reach the client, or her caretakers by any means including by telephone.    Meanwhile, the client was based way up in Henderson County, Texas (SE of Dallas) and so Plaintiff Robins never got to meet her before her two sons institutionalized her at a Medicaid-accepting facility.

24. There she reportedly promptly passed away in her early sixties even as her sons conveniently ignored Plaintiff Robins for somewhere around two years during the aftermath, albeit without relinquishing potential claims to her cause of action for approximately $7,000 (seven thousand dollars) against an estate liquidator.   Plaintiff

Robins never accepted her kind offers to compensate him for the several dozen hours that he had spent on her case, preferring instead to try to collect from the defendant estate liquidator (named John Sauls, of Tyler, Texas) for breach of contract claims.  He timely filed and maintained the lawsuit for her, reportedly after her death, in ways that neither state law, state rules nor state jurisprudence appear to prohibit.  Furthermore, although Plaintiff Robins certainly apologizes for anything inadequately done by him, he successfully obtained a cashier's check for his disabled, nearly mute client.  Besides which, the Texas Bar's own rules say that **"[a] lawyer who acts in good faith is not subject to discipline, under those provisions for an isolated inadvertent or unskilled act or omission, tactical error, or error of judgment."  Texas Disciplinary Rules of Professional Conduct #1.01, comment 7**.   Plaintiff Robins was nevertheless prosecuted after his abovementioned Sunset Review activism.

25. Compounding matters, the reportedly deceased client's sons somehow used Medicaid to pay for her institutionalization but nevertheless kept for themselves the proceeds of the sale of her lakehouse.  When the abovementioned county court judge in Tyler, Texas expressed concern about the predictably resulting peculiar circumstances involving her demise (including the very belated nature of the report of her death by the sons to Plaintiff Robins), that judge demanded that the case be pursued in probate court, instead of his own.   Soon thereafter, the client's two sons repeatedly did whatever they could to eliminate Plaintiff Robins' further involvement on behalf of their reportedly deceased mother, despite their having previously repeatedly urged him to keep pursuing her (small) case that no other lawyer would accept.   Probably not coincidentally, Medicaid could have otherwise opened an administration and potentially recovered the lakehouse proceeds from the sons.

26.  The Texas Bar is well aware of the abovementioned and apparently does not dispute any of it.   Nevertheless, it continues to assert that it was Plaintiff Robins who was dishonest.   It seems that in the process the Texas Bar has aided & abetted Cindy Crisp's two sons' apparent conspiracy to commit Medicaid fraud, though.   Medicaid is already bankrupt, as the bottom line (literally) here helps document: http://www.USDebtClock.org .   Although the Texas Bar could seemingly care less about Medicaid fraud, Plaintiff Robins does not share in such apathy or complicity.

9

## **Preponderance of the Evidence vs. Clear & Convincing Evidentiary Standards**

27. Exacerbating the situation, the Texas Bar insists upon applying merely a "**preponderance of the evidence**" standard (instead of the U.S. Supreme Court required "**clear & convincing**" one) to the lone enforcement action against Plaintiff Robins. **Apparently over 80% of U.S. states & Washington D.C. already have their respective attorney discipline authorities use the "clear & convincing" burden of proof**, with the exception of merely 9 states:  Arkansas, Kentucky, Minnesota, Michigan, Missouri, New Mexico, Tennessee, Utah, and Texas.   In contrast, apparently 42 U.S. states and Washington D.C. use the "clear & convincing" standard, or its virtual equivalent.   This includes Florida, New York, California, Washington D.C., Oklahoma, Illinois and many others.   Texas' insistence upon using the "preponderance" standard is noncompliant with federal constitutional due process protections.

28. One of the punishments contemplated and mentioned in the Texas Bar's enforcement action pleadings against Plaintiff Robins is disbarment.   The U.S. Supreme Court has stated that disbarment proceedings are part of a "punishment or penalty imposed on the lawyer."    *In re Ruffalo*, 390 US 544, 550 (1968).   They "are adversary proceedings of a **quasi-criminal** nature."   *Id.* at 551.   Since then, the Supreme Court of *Texas* has nevertheless stated that:

   At several points in its opinion the court of appeals states that disciplinary actions are "quasi-criminal in nature." Clear Texas authority is that disciplinary proceedings are civil in nature. *E.g., Hankamer v. Templin,* 143 Tex. 572, 575, 187 S.W.2d 549, 550 (Tex.1945); *State Bar v. Sutherland,* 766 S.W.2d 340, 343 (Tex.App.—El Paso 1989, writ denied) (opinion by same court of appeals handed down two weeks prior stating that disciplinary actions are civil in nature); *see also Polk v. State Bar,* 480 F.2d 998, 1001-02 (5th Cir.1973) (applying Texas law); Supreme Court of Texas, Rules Governing the State Bar of Texas art. X, § 16 (1988) ("Disciplinary actions are civil in nature."). Thus, we disapprove these statements by the court of appeals.

*State Bar of Texas v. Evans,* 774 SW 2d 656, 659 n.1 (Tex. 1989).

29. However, as the U.S. Supreme Court told the state of Texas decades ago when vacating and remanding a Texas judgment based on the standard of proof Texas had used in civil commitment proceedings:

The function of a standard of proof, as that concept is embodied in the Due Process Clause and in the realm of factfinding, is to "instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication." *In re Winship,* 397 U. S. 358, 370 (1970) (Harlan, J., concurring). The standard serves to allocate the risk of error between the litigants and to indicate the relative importance attached to the ultimate decision. *Addington v. Texas*, 441 US 418, 423 (1979).

Furthermore, "we must be mindful that the function of legal process is to minimize the risk of erroneous decisions. *See Mathews* v. *Eldridge,* 424 U. S. 319, 335 (1976); *Speiser* v. *Randall,* 357 U. S. 513, 525-526 (1958)." *Id*. at 425. "Increasing the burden of proof is one way to impress the factfinder with the importance of the decision". *Id*. at 427.

30. The Defendants' enforcement action trial against Plaintiff Robins is scheduled to get underway here in Harris County on the morning of **Monday, February 6th, 2023** under the direct supervision of defendant Raquel West. All the while, the Texas Bar continues doing favors for members of the state judiciary here in Texas such as providing its members preferential treatment in its media projects and that of its closest allies, as well as in its judicial polling and also its special recognitions & awards-related endeavors. The Texas Bar even advocates for salary increases for state judges & justices, making the decision of the plaintiffs in the abovementioned McDonald v. Longley case to pursue their grievances against the Texas Bar in *federal* court all the more understandable.

31. The Texas Disciplinary Rules of Professional Conduct under which Plaintiff Robins is being prosecuted are the following:

> Rule 1.15(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a clients interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payments of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law only if such retention will not prejudice the client in the subject matter of the representation.

**Rule 3.01 Meritorious Claims and Contentions**

> A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless the lawyer reasonably believes that there is a basis for doing so that is not frivolous.

Rule 3.02 Minimizing the Burdens and Delays of Litigation
> In the course of litigation, a lawyer shall not take a position that unreasonably increases the costs or other burdens of the case or that unreasonably delays resolution of the matter.

Rule 3.03 Candor Toward the Tribunal
(a) A lawyer shall not knowingly:
> (1) make a false statement of material fact or law to a tribunal;
> (2) fail to disclose a fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act;

Rule 8.04 Misconduct
(a) A lawyer shall not:
> 3) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

To say the least, they are constitutionally impermissibly vague and overbroad, thereby necessitating a "clear & convincing" evidence standard to reduce the likelihood of injustice. The Court has the authority to intervene pursuant to jurisprudence such as Mitchum v. Foster, 407 U.S. 225 (1972). Such intervention is hereby requested, please.

### Defendants' Unconstitutional Conduct & the Plaintiff's Allegations

32. The Plaintiff incorporates the preceding paragraphs by reference as if fully rewritten herein and now states the following:

### 1st Cause of Action: *42 U.S.C. § 1983*

33. The Defendants at all times relevant to this action were, and continue acting under color of state law.

34. The Defendants subjected and continue subjecting the Plaintiff to conduct that occurred under color of state law, and this conduct deprived, and continues to deprive,

him of rights, privileges and immunities guaranteed under federal law and the U.S. Constitution's 4th & 5th Amendments made applicable to the states by the 14th Amendment.

35. The Plaintiff seeks legal relief as a result.

### 2nd Cause of Action: 4th & 5th Amendment Violations

36. The Texas Bar's CFLD insists upon applying merely a "**preponderance of the evidence**" standard, instead of the federal constitutionally required "**clear & convincing**" burden of proof one, to the lone enforcement action against Plaintiff Robins and also to those of all other member attorneys whom that bar prosecutes.   In the pursuit of enabling Texas to become constitutionally compliant, Plaintiff Robins hereby seeks declaratory and injunctive relief prohibiting the Defendants' continuation of its enforcement action without modifying its burden of proof standard.

### 3rd Cause of Action:  First Amendment violations

37. The Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.  Plaintiff Robins does not agree with the Texas Bar's current or at least previous unlawful practice of engaging in political and / or ideological activities that were or are non-germane to regulating the legal profession and / or improving the quality of legal services.  He has endured violations of First Amendment-related freedoms of association, religion, speech & expression during the enforcement action against him.   "The loss of First Amendment freedoms, for even minimal periods of time unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality).

38. The Defendants' conduct has caused and continues to cause substantial injury to Plaintiff Robins.  The gravity of the Defendants' alleged wrongful conduct outweighs any purported benefits attributable to such conduct.  There were reasonably available alternatives available to the Defendants to further their interests, other than callously encroaching upon the Plaintiff's First Amendment rights.

39. Plaintiff Robins has suffered injury in fact and has lost money, well-being and opportunities as a result of the Defendants' unfair and unlawful practices. Moreover, the Defendants continue with behaviors that are prohibited. He is therefore entitled to the relief available under the law.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Robins prays that this Court please issue the following relief:

a. A declaratory judgment that the Defendants violate Plaintiff Robins' constitutional rights by using a mere "preponderance of the evidence" burden of proof in their enforcement action against him.

b. An order and judgment preliminarily and permanently enjoining the Defendants from continuing with their enforcement action against member Rich Robins unless and until they bring their burden of proof standard into federal constitutional compliance by adopting the "clear & convincing" standard and allowing him time & opportunity to adapt his trial preparations accordingly.

c. An order and judgment granting reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and any other relief that this Court deems just and proper.

DATED: February 3rd, 2023         **Respectfully submitted**,

Rich Robins
Federal registration #: 00789589
Texas state bar #:   00789589
2450 Louisiana St. #400-155
Houston, TX 77006
(832) 350-1030 Tel.
(713) 574-6279 Fax.
[E-mail is strongly preferred over faxing, *please*.]
Rich@TexasBarSunset.com
www.TexasBarSunset.com

By: _____

Rich Robins

15

## CERTIFICATE OF SERVICE

    I, Rich Robins, do hereby, certify that during February of 2023 a true and correct copy of the above and foregoing Complaint is being sent via certified US MAIL (or satisfactory alternative means) to the Defendants:

**State Bar of Texas** aka the "Texas Bar", its **CFLD** and **John Brannon** (of Houston, TX) c/o Executive Director Ervin A. "Trey" Apffel and / **or**
Texas Law Center
1414 Colorado Street
Austin, Texas 78701

&

**Raquel West**
1085 Pearl Street
Beaumont, TX 77701

By: _____
        Rich Robins